

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

May 31, 1939

Mr. R. A. Shepherd
Vinson, Elkins, Weems
& Francis
Niels Esperson Bldg.
Houston, Texas .

Opinion No. O-851
Re: Recycling agreements relat-
ing to properties in the Agua
Dulce Field, Nueces County,
Texas.

Dear Sir:

We have your letter of May 15, 1939, with reference to certain agreements relating to the recycling of gas in the Agua Dulce gas field in Nueces County, Texas.

We also acknowledge receipt of the following specimen contracts:

1.  Contract between Union Producing Company, United Gas Pipe Line Company, and Clyde H. Alexander, John J. Sheerin and Robert T. Wilson, which is hereinafter called the Alexander contract.

2.  Contract between Union Producing Company, United Gas Pipe Line Company, and the Agua Dulce Company, which is here-inafter called the Agua Dulce contract.

3.  Contract between royalty owners and Union Produc-ing Company, hereinafter called royalty contract.

From your letter, and from the specimen contracts which you have submitted to us, we understand that the plan contem-plated by the contracts may be briefly outlined as follows:

Union Producing Company owns leases on the greater part of the producing acreage in the Agua Dulce gas field, which con-tains several gas producing horizons. Union Producing Company has a contract with United Gas Pipe Line Company whereby United Gas Pipe Line Company has the right to purchase from Union Pro-ducing Company gas which it needs for pipe line purposes. Since the market for gas to be used for light and fuel is limited, it is planned to utilize the excess gas for the extraction of na-tural gasoline and the separation of condensate from the gas. With this purpose in mind, Union Producing Company and United Gas Pipe Line Company have entered into contracts with The Agua Dulce Company and Clyde H. Alexander, et al., respectively, whereby The Agua Dulce Company and Alexander, et al., agree to

process and recycle gas not required by United Gas Pipe Line Company. Contracts have also been entered into, or will be entered into, between Union Producing Company and the various royalty owners authorizing the processing and recycling of the gas. Each of these contracts contains many detailed provisions relating to the rights and obligations of the contracting parties.

The first question presented is whether the Attorney General of Texas is authorized or required to approve or disapprove these contracts. This question, we believe, is answered by Section 21 of Article 6008, of the Revised Civil Statutes (House Bill No. 266, Acts Forty-fourth Legislature, Regular Session, 1935, Chapter 120, p. 318) which provides as follows:

"In order that land owners and operators that have undeveloped land within a proven natural gas field may secure a market for their natural gas, and in order that the market for natural gas may be more equitably distributed among the various land owners and operators, and in the interest of the conservation and development of natural gas, it is declared to be lawful for any two or more lessors, lessees, operators, or other persons, firms, or corporations owning or controlling production, leases, royalties or other interests in the separate properties of the same producing gas field, with the approval of the Attorney General of Texas, to enter into agreements for the purpose, of bringing about cooperative development and/or operation of all or a part, or parts of such field, or for the purpose of fixing the time, location and manner of drilling and operating wells for the production, storage, marketing or the repressuring of gas, or for the purpose of the equitable distribution of royalty payments. Any such agreement shall bind only the parties thereto, and their successors and assigns of such having knowledge or notice thereof, and shall be enforceable in an action for specific performance."

It is our opinion that under the statute quoted above the Attorney General of Texas is authorized and required to approve or disapprove agreements between land owners and operators relating to the cooperative development of natural gas fields. It is also our opinion that the Attorney General is authorized only to consider whether the contracts comply with or violate the conservation laws of this State, and that the Attorney General is not authorized or required to determine whether the contract is fair or equitable between the contracting parties. Under Article IV, Section 22, of the Constitution of Texas, we believe that the Attorney General is not authorized to represent

private parties while acting in his official capacity.

We believe that the Agua Dulce contract and the Alexander contract are designed so as to comply with the conservation laws of the State of Texas, and the rules and regulations of the Railroad Commission of Texas promulgated in pursuance of such statutes. Paragraph XXVII of the Alexander contract provides as follows:

"This agreement shall be subject to all valid rules and regulations of the Railroad Commission of Texas or other regulatory body having jurisdiction and Seller agrees to operate its wells and produce the gas therefrom in accordance with all such orders, rules and regulations, and Buyers agree to operate their plant, lines and equipment in accordance with all such orders, rules and regulations."

Paragraph XXII of the Agua Dulce contract is identical in its provisions with Paragraph XXVII of the Alexander contract, quoted above. We construe these paragraphs to mean that all provisions of both contracts are subject to the valid orders of the Railroad Commission, and that, in the event that any provision of either contract should conflict with any order of the Railroad Commission, the contractual provision shall be inoperative. As so construed, the contracts do not, in our opinion, violate any of the conservation laws of the State of Texas.

Without attempting to discuss in detail the various provisions of the Alexander and the Agua Dulce contracts, we wish to mention certain provisions and point out their relation to the conservation laws. The general purpose of the contracts is authorized by Section 21 of Article 6008, Revised Civil Statutes, quoted above, and also by Subdivisions (c) and (d) of Section 7 (1) of said Article, which provide that sweet gas may be used for the following purposes:

"(c) Bona fide introduction of gas into oil, or gas bearing horizon, in order to maintain or increase the rock pressure or otherwise increase the ultimate recovery of oil or gas from such horizon.

"(d) The extraction of natural gasoline therefrom when the residue is returned to the horizon from which it is produced."

Our information is that all of the gas produced from this field is sweet gas, so that the question of the possible commingling of sour gas and sweet gas is not involved. It is provided by these contracts, however, that the gas need not be returned to the same formation or lease from which it was produced. Paragraph

XXV of the Alexander agreement provides, in part, as follows:

"It is understood and agreed that it will be neces-
sary for Seller to secure agreements from various of its
royalty owners providing . . . that the gas may be re-
turned into certain input wells drilled on the above re-
ferred to premises without actually being returned to the
exact lease or exact well on the lease from which the same
was produced and without being returned into the exact
formation from which the gas was produced, . . ."

Paragraph XV of the same contract provides, in part,
as follows:

"It is recognized and agreed that Buyers will be un-
able, due to varying operating conditions, to return to
each formation during any specific day or other specific
period of time, the exact ratable proportion of the gas
which should be returned thereto, but Buyers agree that
they will, to the best of their ability, by balancing ex-
cesses against deficiencies during periods of reasonable
duration, maintain a ratable proportion of gas returned
to each formation based on the amount of gas withdrawn
therefrom."

Substantially the same provisions as those quoted above
are found in Paragraphs XX and XV of the Agua Dulce contract.
These provisions correspond to the provision in Paragraph I of
the royalty contracts, which reads as follows:

"Lessee shall have the right to deliver under said
Agua Dulce Contract or under said Alexander Contract gas
produced from the above described premises for the extrac-
tion of natural gasoline and separation of condensate from
said gas, and in making such deliveries of gas and in mak-
ing such deliveries of gas and in the processing thereof
to permit the gas produced and delivered from the above de-
scribed land to be commingled with gas produced from other
lands and leases in the Agua Dulce Field; provided that the
gas remaining after the extraction of natural gasoline and
separation of condensate from all gas delivered by Lessee
under said Contracts shall, except as otherwise provided
in said Contracts, be returned into the formation or form-
ations from which such gas was produced through certain
input wells located at points selected by Lessee on the
above described land or on other lands or leases in the
Agua Dulce Field subject to such Agua Dulce Contract or
subject to such Alexander Contract.

"It is recognized and agreed that in order
to secure efficient and profitable operation of
the plants in which Lessee's gas is processed, it
may not be feasible to produce gas from each and
every lease or tract of land in the Agua Dulce
Field subject to said Agua Dulce Contract or sub-
ject to said Alexander Contract, or to return to
each said lease or tract of land subject to either
of said Contracts the quantity of gas equivalent to
the gas remaining from that delivered from the said
lease or tract of land after the extraction of
natural gasoline and the separation of condensate
therefrom. Therefore, Lessee shall have the right
to produce the gas marketed or used by Lessee and
the gas delivered by Lessee under a either of said
Contracts, from any of the leases or tracts of land
subject to either of said Contracts. Lessee shall
also have the right to cause the gas remaining af-
ter processing in said plants to be returned to
the formation or formations from which produced
through input wells located at points selected by
Lessee on any lease or tract of land in the Agua
Dulce Field subject to either of said Contracts."

In this connection we have consulted with Mr. John E.
Taylor, the Chief Supervisor of the Oil and Gas Division of the
Railroad Commission, and Dr. F.V.L. Patten, Director of Produc-
tion in said Division. They concur in our opinion that it is not
necessary to return the gas to the exact formation from which it
was withdrawn, nor that the exact proportionate part of the gas
be returned each day to the formations from which the gas was
withdrawn, but that it is sufficient, under the present orders
of the Railroad Commission, that a ratable proportion of the gas
be returned to each formation within a reasonable time after with-
drawal. Our opinion is based on our understanding that it would
be a practical impossibility to operate a recycling plant in a
field such as the Agua Dulce gas field without commingling the
gas from several formations, and that it would be practically im-
possible to keep the amount of gas reinjected into each formation
each day exactly proportional to the amount withdrawn. Of course,
these provisions of the contracts to make any orders necessary
to prevent waste, such as orders limiting the amount of gas with-
drawn from or reinjected into any formation in order to prevent
the reservoir pressure from getting too high or too low.

We also wish to direct your attention to the possibility
of a conflict between a portion of Paragraph I of the royalty
contract and Section 20 of Article 6008, Revised Civil Statutes.
Paragraph I of the royalty contract provides, in part, as follows:

"......Lessee shall have the right to
produce the gas marketed or used by
Lessee under either of said Contracts,
from any of the leases or tracts of
land subject to either of said Con-
tracts."

Section 20 of Article 6008, Revised Civil Statutes,
reads as follows:

"In the event the Commission finds that the
owner of any gas well has failed or refused to
utilize or sell the allowable production from his
well when such owner has been offered a connection
or market for such gas at a reasonable price, such
well shall be excluded from consideration in allo-
cating the daily allowable production form the
reservoir or zone in which same is located until the
owner thereof signifies to the Commission his
desire to utilize or sell such gas. In all other
cases all gas wells shall be taken into account in
allocating the allowable production among wells
producing the same type of gas."

Since there is no gas proration order now in effect with
reference to the Agua Dulce Field, Section 20 does not now apply
to said field; but in the event that a gas proration order is
adopted by the Railroad Commission which is applicable to this
field, it would be necessary for the Lessee to comply with the
provisions of Section 20, or any similar statute, in order to
obtain the allowable for each well. We assume that, under the
provisions of the Alexander and Agua Dulce contracts quoted
above, it is the intention of the producers to abive by any
statutes or orders of the Railroad Commission in this connection.

To summarize, it is our opinion that the three contracts
submitted to us, as construed above, do not violate the conserva-
tion laws of this State.

Yours very truly

ATTORNEY GENERAL OF TEXAS

JPH:FG:wc

APPROVED:
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

By s/James P. Hart
    James P. Hart
    Assistant.

Approved Opinion Committee By  s/R.W.F.  Chairman